IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| KEENAN LENNARD MANLEY, | * |
| Plaintiff, | * |
| v. | *   Civil Action No. BAH-24-2949 |
| JANET McCULLIGAN, | * |
| Defendant. | * |

***

## MEMORANDUM OPINION

Self-represented Plaintiff Keenan Lennard Manley ("Plaintiff" or "Manley"), incarcerated at the Baltimore County Detention Center ("BCDC"), filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging that Defendant Janet McCulligan ("Defendant" or McCulligan") subjected him to the use of excessive force. ECF 1. Defendant filed a motion for summary judgment. ECF 8. Manley was notified of his right to file a response to Defendant's dispositive motion pursuant to *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir. 1975). *See* ECF 9. However, to date, Manley has not responded to the motion. A hearing is not necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons that follow, Defendant's motion shall be granted, and the complaint will be dismissed without prejudice due to Manley's failure to exhaust administrative remedies.

**I.      Background**

Manley alleges that in December of 2022 he was woken by Defendant McCulligan so that he could take a COVID test. ECF 1, at 4. On his way to the medical room, he and McCulligan got into an argument. *Id.* After the test was administered by a nurse in the medical room, Manley began to return to his assigned dorm when McCulligan made "disrespectful remarks" to him. *Id.* Manley asked what McCulligan said, and McCulligan directed he not walk toward her. *Id.* Manley states that he remained standing still and repeated his question. *Id.* Manley asserts that McCulligan

then punched Manley in the face and called for assistance on her radio. *Id.* Manley ran toward McCulligan to restrain her from harming him any further. *Id.* at 5. According to the complaint, McCulligan threw two chairs at Manley, the second of which struck him in the head. *Id.* Manley grabbed McCulligan from behind to restrain her and held her until another officer arrived. When the other office arrived, Manley asserts that he complied with directives to get on the ground and put his hands behind his back. *Id.* As the other officer began to put handcuffs on Manley, McCulligan kicked and stomped Manley in his head. *Id.* Manley alleges that he suffered injuries to his head, bruising, a concussion, internal bleeding, and a black eye. He seeks compensatory damages. *Id.*

In her motion, Defendant explains that as a part of the intake process at BCDC, Manley was provided a copy of the "Baltimore County Department of Corrections Inmate Handbook & Rules" which explains the detention center's complaint procedures. ECF 8-4 (affidavit of Stephen Verch, management analyst at BCDC), at 3 ¶¶ 7, 8; ECF 8-5 (Department of Corrections Directive 3.3.01: Inmate Handbook). Baltimore County Detention Center policy provides for a formal inmate complaint process, where an inmate's concern cannot be resolved informally. ECF 8-3 (Department of Corrections Directive 3.3.03: Inmate Complaints), at 3. The formal complaint process begins with the filing of an Inmate Complaint Form #200 by the inmate which then prompts an investigation by the Warden's designee within certain specified time frames. *Id.* Manley did not file an "Inmate Complaint Form #200" regarding the facts alleged in this case. ECF 8-4, at 3 ¶ 6. He did file other complaints unrelated to the facts alleged here. ECF 8-6.

## II. Standard of Review

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48 (emphasis in original). A court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568–69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

The Court is mindful, however, that Manley is a self-represented litigant. A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But liberal construction does not mean a court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *See Weller v. Dep't of Soc. Sers.*, 901 F.2d 387, 391 (4th Cir. 1990). A court cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

**III.   Analysis**

Defendant raises the affirmative defense that Manley failed to exhaust his administrative remedies. The Prisoner Litigation Reform Act ("PLRA") provides, in pertinent part: "No action

shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." *Id.* § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004).

The doctrine governing exhaustion of administrative remedies has been well established through administrative law jurisprudence. It provides that a plaintiff is not entitled to judicial relief until the prescribed administrative remedies have been exhausted. *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006). Therefore, a claim that has not been exhausted may not be considered by this Court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007). In other words, exhaustion is mandatory, and a court ordinarily may not excuse a failure to exhaust. *See Ross v. Blake*, 578 U.S. 632, 639 (2016) (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining that "[t]he mandatory 'shall'... normally creates an obligation impervious to judicial discretion" (alteration in original))).

However, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants.

4

*See Bock*, 549 U.S. at 215–16; *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 682 (4th Cir. 2005).

The PLRA's exhaustion requirement serves several purposes. These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Bock*, 549 U.S. at 219; *see also Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (recognizing that exhaustion provides prison officials with the opportunity to respond to a complaint through proper use of administrative remedies). It is designed so that prisoners "pursue administrative grievances until they receive a final denial of their claim[s], appealing through all available stages in the administrative process" so that the agency reaches a decision on the merits. *Chase*, 286 F. Supp. 2d at 530; *see also Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943–44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust where he did not appeal his administrative claim through all four stages of the BOP's grievance process); *Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or final administrative review after prison authority denied relief"); *see also Griffin v. Bryant*, 456 F.4th 328 (4th Cir. 2022) (recognizing PLRA's "strict" requirement to exhaust all available administrative remedies").

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore*, 517 F.3d at 725, 729; *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("The ... PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines ... ." *Woodford*, 548 U.S. at

5

88. This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Id.* at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). But the Court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see also Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) (finding that "the inmate cannot be required to exhaust [administrative remedies] . . . when prison officials prevent inmates from using the administrative process").

The uncontroverted evidence demonstrates that Manley was aware that an administrative process existed but failed to initiate that process regarding the claims asserted here. As a pretrial detainee, Manley was a "prisoner" for purposes of the PLRA because he was a "person incarcerated or detained in any facility who is accused of . . . violations of criminal law." 42 U.S.C. § 1997e(h). Furthermore, Manley does not contest Defendant's assertion that the complaint should be dismissed for failure to exhaust remedies. As discussed, the PLRA requires that inmates exhaust all available remedies. Because Manley failed to do so, his complaint must be dismissed without prejudice to refiling after he has exhausted administrative remedies.[1]

---

[1] While Defendant has moved for summary judgment, and the Court has considered evidence beyond the complaint in reaching the conclusion herein, the Fourth Circuit has advised that dismissal for failure to exhaust should be without prejudice. *See Moss v. Harwood*, 19 F.4th 614, 623 n.3 (4th Cir. 2021) (collecting cases); *Germain v. Shearin*, 653 F. App'x 231, 234–35 (4th Cir. 2016) (finding dismissal "mandatory" for failure to exhaust and affirming district court's grant of summary judgment but modifying order to be dismissal without prejudice).

## IV. Conclusion

For these reasons, Defendant's motion for summary judgment is granted. The complaint will be dismissed without prejudice for failure to exhaust administrative remedies.

A separate Order follows.

May 1, 2025                                             /s/
Date                                                    Brendan A. Hurson
                                                           United States District Judge